UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

JENNIFER MANCINI

                Plaintiff,

   - against-

STARBUCKS COFFEE COMPANY
JEFFERY CARON, in his official capacity;
MIKAELA KINER, in her official capacity
DEAN BREWSTER, in his official capacity

               Defendants.

_____x

**DOCKET NO.**
08 CIV 9556 (FM/LAP)
"ECF CASE"

**COMPLAINT**

***Jury Trial Demanded***

    Plaintiff, JENNIFER MANCINI, by and through her attorneys, LAW OFFICE OF SUSAN P.

JACOBS, ESQ.  as and for the complaint against the Defendants, states and alleges as follows:

**INTRODUCTORY STATEMENT**

    1.    This is an action to remedy violations of the rights of Plaintiff, Jennifer Mancini,

seeking injunctive relief, monetary relief, including past and ongoing economic loss, compensatory

damages, punitive damages, disbursements, costs and fees because of the actions against plaintiff

in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §.2000e et seq.,

including sex and gender discrimination and retaliation; American with Disabilities Act of 1990, 42

U.S.C.§12101 et. seq,;  violation of the Family Medical Leave Act, 29 U.S.C.A. §2601 et seq;  New

York State Executive Law §290 et. seq., (Human Rights Law) and other State causes of action,

including intentional infliction of emotional distress; negligent retention/supervision of an unfit

1

employee and breach of contract.

2.     Specifically, Plaintiff alleges that the Defendants wantonly, recklessly, negligently, knowingly and purposefully, acting individually and collectively, sought to and did  deprive Plaintiff of equal employment through an ongoing and continuous pattern and practice of discrimination, misrepresentation, misinformation, harassment, character assassination, abuse and manipulation of laws, rules and regulations on the basis of Plaintiff's gender, sex and disability.

3.     Said acts were done knowingly with the consent and condonation of Defendants Starbucks Coffee Company, Jeffrey Caron, Mikeala Kiner and Dean Brewster with the intended, implied and expressed purpose of violating the rights of Plaintiff as protected by statutes, rules and regulations.

## JURISDICTION and VENUE

4.     The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331, Federal Question; § 29 U.S.C.A. 2617; .  The Court's pendent jurisdiction is also invoked pursuant to 28 U.S.C. §. 1367.

5.     Venue is proper pursuant to 28 U.S.C..§1391 in that the unlawful employment practices alleged herein were committed in whole or in part in the Southern District of New York, and the defendant Starbucks Coffee  maintains a place of business within the Southern District.of New York

6.     All conditions precedent to maintaining this action have been fulfilled.  Plaintiff filed a timely complaint with the Equal Employment Opportunity Commission which was concurrently

2

filed with the New York State Division of Human Rights.  By Determination after Investigation a

Probable Cause Finding was issued by the New York State Division of Human Rights that there

exists probable cause to believe that Defendants engaged in unlawful discriminatory practices against

Plaintiff.   The Equal Employment Opportunity Commission issued a Notice of Right to Sue Letter

dated August 7, 2008..

       7.     Plaintiff received the Notice of Right to Sue Letter on August 11, 2008,

## PROCEDURAL REQUIREMENTS

       8.     Plaintiff has satisfied all procedural requirements prior to commencing this action.

Plaintiff filed a timely charge of discrimination alleging sex, gender, disability with the New York

State Division of Human Rights filed concurrently with the Equal Employment Opportunity

Commission through its worksharing program.  Plaintiff  brings this action within ninety (90) days

of the receipt of a Notice of Right to sue, issued by the EEOC on August 7, 2008, and received by

plaintiff on August 11, 2008 a copy of which is attached hereto as Exhibit "A".

## PARTIES

       9.     Plaintiff, Jennifer Mancini (hereinafter "Ms Mancini") is a female and a citizen of the

United States, and at all times hereinafter mentioned, was and still is a resident and domiciliary of

Nassau County, State of New York residing at 208 Blacksmith Road, Levittown, New York.  At all

times relevant herein, plaintiff was an employee of defendant Starbucks Coffee Company

(hereinafter "Starbucks") within the meaning of 42 U.S.C. §. 2000e, et seq.; § 42 U.S.C.A. 12101;

29 U.S.C.A. 2611(2)(A);   Plaintiff was assigned to the New York City Office location but worked

from her house in Levittown, Nassau County, New York.

10.     Defendant, Starbucks, is a Corporation under the laws of the State of Washington with an address of 2401 Utah Avenue South, Seattle, Washington and is engaged in the business of retail coffee sales. Defendant maintains a regional office at 550 5th Avenue, New York, New York and maintains and services numerous business locations within the juridsiction of United States District Court for both the Southern and Eastern District, and at all times relevant to this action defendant was an "employer" within the meaning of the relevant aforementioned statutes.

11.     Defendant Jeffery Caron is a male supervisor for Defendant Starbucks and was at all times relevant an employee and supervisor for defendant Starbucks in the New York regional office. Defendant Caron had supervisory control over Plaintiff.

12.     Defendant Mikaela Kiner is and was at all times relevant an employee of defendant Starbucks in the position of a Partner Resources Manager.

13.     Defendant Dean Brewster is a male and was and is at all times relevant an employee of Defendant Starbucks and Plaintiff's direct supervisor.

## FACTUAL ALLEGATIONS

14.     Plaintiff began working for Defendant Starbucks' predecessor, Seattle Coffee Company as an Account Manager in 1998. Plaintiff was subsequently promoted to the position of Sales Executive.

15.     In or around June 2003 Defendant Starbucks Coffee purchased Seattle Coffee Company. Plaintiff was then employed by defendant Starbucks from on or about June 2003 to her termination on September 22, 2006.

4

16.      By letter to Plaintiff dated October 1, 2003 signed by John Culver, vice president/general manager of Foodservice, Defendant Starbucks entered into an employment contract with Plaintiff.  Plaintiff signed the contract on October 8, 2003.

17.      The employment contract provided that Plaintiff would not be terminated for any reason prohibited by law.

18.      Defendants breached that contract when Plaintiff was terminated because of her gender and disability.

19.      Plaintiff held the position of Account Services Manager with Defendant Starbucks

20.      Plaintiff worked for the Food Services Division of the New York Regional Office.

21.      Plaintiff received merit increases

22.      Plaintiff's work and evaluations ranged from "Meet Expectations" to "Exceeds Expectations".

23.      Plaintiff's 2004 performance review was a 2.6 out of 3 which means Consistently Meets Expectations.

24.      Plaintiff's 2005 performance reviews was a 2.4 out of a possible 3 which means Meets Expectations.

25.      In or around June 2003 the New York Regional Office was comprised of four women, four men plus two male managers.

26.      As of January 2007 the New York Regional Office was all male.

27.      Plaintiff is female and suffers from chronic depression which manifests itself in both physiological problems as well as mental disorder affecting her ability to think and to work without a reasonable accommodation.

28.     Plaintiff informed her supervisor Dean Brewster of her medical condition.

29.     Upon information and belief, in or around 2006, a former female employee named Sheila Chriss filed a complaint with defendant Starbucks Partner Resources Department that she was being harassed and targeted by her male manager, Defendant Caron.

30.     Plaintiff was contacted by Defendant Kiner, Partner Resources Manager regarding this matter.

31.     Plaintiff was assured by Defendant Kiner at Partner Resources that there would be no retribution against her for her participation in the investigation into Ms. Chriss' claims.

32.     Plaintiff provided a statement based on the assurances by Defendant Kiner,  Partner Resources Manager.

33.     However, Plaintiff was then directed by her manager, Defendant Dean Brewster, that she was to cease any contact with Ms. Chriss.

34.     Ms. Chriss contacted Plaintiff regarding her complaint, however, because of Defendant Brewster's warning, Plaintiff would not discuss the matter with Ms. Chriss for fear of retaliation.

35.     Upon information and belief, Ms. Chriss' position was filled by a male.

36.     In or around 2006, Plaintiff's manager, Dean Brewster, filed a complaint with Partner Resources against Defendant Jeffrey Caron.

37.     Mr. Brewster's complaint against Defendant Jeffrey Caron was on behalf of Plaintiff.

38.     Defendant Caron was known to berate Plaintiff in front of her male coworkers.

39.     Defendant Caron was known to seek information against Plaintiff in his attempts to berate and harass her because of her gender and to try to force her termination.

40.     Upon information and belief, Defendant Caron was reprimanded and told not to speak directly to Plaintiff.

41.     Following the reprimand, Defendant Caron increased his attacks against Plaintiff.

42.     Further, Defendant Caron used Plaintiff's peers to increase his attacks against Plaintiff.

43.     Upon information and belief, Defendant's Caron's actions were not directed at any of Plaintiff's male peers.

44.     Defendant Caron would berate Plaintiff at every opportunity.

45.     Defendant Caron, while on a conference call, and unaware that Plaintiff had called in, unmercifully attacked Plaintiff prompting other participants to call Plaintiff to apologize for his behavior.

46.     Defendant Starbucks did nothing to stop Defendant Caron's actions against Plaintiff thereby allowing him to continue his attacks and cause Plaintiff severe emotional harm.

47.     At the time of Plaintiff's termination only one female, Debra Hackett, remained in the New York Regional Office.

48.     In or around 2007 Ms. Hackett left Defendant Starbucks employ.

49.     Upon information and belief, Ms. Hackett's left Defendant Starbuck's employ even though she did not have other employment because of the discriminatory treatment by her male supervisors.

50.     Plaintiff suffers from chronic depression and it is not eradicated by medication.

51.     In March 2005 Plaintiff notified her immediate supervisor, Defendant Dean Brewster, of her disability.

52.     Defendant Brewster told plaintiff that he feared his knowledge of her condition would cause him to treat her differently than other employees.

53.     Defendant Brewster did not inform Partner Resources of his knowledge of Plaintiff's disability  until on or around February 2006.

54.     Defendant Brewster noted in a document dated March 6, 2006 and signed by Defendant Brewster and Plaintiff that, "[i]n the past you have mentioned to me that you have a health condition that may be impacting your performance at work."

55.     Defendant Brewster arranged a conference call meeting with Defendant Kiner and Plaintiff.

56.     During this meeting Defendant Kiner stated that Plaintiff could request a leave of absence or a modified work schedule to accommodate her disability, as needed.

57.     Plaintiff stated that she would notify them when the need arose.

58.     On or around the beginning of September 2006, and with the continued attacks by Defendant Caron, Plaintiff's medical symptoms became worse requiring the need for a doctor suggested medical leave of absence.

59.      Plaintiffs condition has caused her to be hospitalized, a situation known to Defendant Brewster.

60.     On or around September 19, 2006 Plaintiff contacted Defendant Starbucks' Leave Administration department, as directed by Defendant Kinear and Defendant  Brewster, to request the paperwork necessary for a medical leave of absence.

61.     Plaintiff notified her immediate supervisor Defendant. Brewster on September 20, 2006 that she would be taking the medical leave of absence that had been offered during the meeting

8

with Defendant Kiner.

62.   Plaintiff was notified on September 22, 2006 that she was terminated.

63.   At the time of termination, Plaintiff was not provided a reason for her termination.

64.   Defendant subsequently denied unemployment benefits to Plaintiff.

65.   Defendant Caron's had finally succeeded in his quest to have Plaintiff terminated and eradicate the remaining female employees.  However, upon information and belief, Defendant Starbucks continues to employ Defendant Caron and has not taken steps to stop his behavior.

66.   As of June 2006 there was only one (1) female manager out of ten (10) managers at the East Zone meeting.

67.   Pursuant to Defendant Starbucks policy Plaintiff would have been entitled to 2/3 pay for the length of her medical leave.

68.   Defendant Starbucks timing of Plaintiff's terminated resulted in her not receiving her 2/3 pay for her medical leave and other monies to which she was entitled to receive.

## AS AND FOR A FIRST CAUSE OF ACTION
## AMERICAN WITH DISABILITIES ACT 42 U.S.C.§12101 et. seq.

69.   Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 68 as if fully set forth herein.

70.   Plaintiff's documented disability substantially limits a major life activity.

71.   Plaintiff's disability became known to the Defendants on or about February 2005 when she notified her immediate supervisor, Defendant Brewster.

72.   Plaintiff required a reasonable accommodation to allow her to perform the essential functions of her duties.

9

73.   Plaintiff's immediate supervisor, Defendant Brewste and Partner Resources Defendant Kiner were aware of Plaintiff's need and had discussed this matter with her.

74.   Plaintiff's reasonable accommodation was not an undue hardship on Defendants.

75.   However,  Defendants' failed to provide the reasonable accommodation needed for plaintiff to perform her duties.

76.   Instead, Defendants terminated Plaintiff within two (2) days of her requesting a medical leave of absence.

77.   Further, Defendants engaged in a pattern of harassment and abuse against Plaintiff.

78.   Defendants actions in terminating Plaintiff has placed her in a position that, despite reasonable efforts, she has been unable to find comparable employment and has suffered a loss in salary, status and benefits.

79.   Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

80.   As a further proximate result of defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation by defendants.

81.   As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

82.   The conduct of defendants was outrageous and malicious, was intended to injury plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling plaintiff to an award to punitive damages.

83.   As a result of defendants acts, Plaintiff suffered and is entitled to damaged sustained

to date and continuing in excess of four million ($4,000,000.00) dollars as well as punitive damages,

costs and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### Sex and Gender Discrimination Under Title VII, 42 U.S.C. s. 2000e

84.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1

through 83, as if fully set forth herein.

85.    Plaintiff was provided with awards for her work in addition to receiving evaluations

of "Meet Expectations" or "Exceeds Expectations."

86.    Notwithstanding Plaintiff excellent work, Defendant Caron embarked on a mission

that included berating Plaintiff in front of her peers; seeking information to use against Plaintiff ,

while not doing the same to male employees.

87.     Plaintiff came into defendant's employ with many years of experience to her credit,

however defendant has ignored this experience and embarked on a pattern to remove all females

from the region.

88.    As a direct result of defendants' sex discrimination against plaintiff, plaintiff has

suffered and continues to suffer substantial losses, including the loss of past and future earnings,

bonuses, deferred compensation, and other employment benefits as to suffer severe and lasting

embarrassment, humiliation and anguish, and other incidental and consequential damages and

expenses.  Further, as a direct result of defendants' actions, plaintiff has suffered and continues to

suffer impairment and damage to plaintiff's good name and reputation.

89.     The conduct of defendants was outrageous and malicious, was intended to injure

11

plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, causing plaintiff to suffer and continue to suffer distress, humiliation, great financial expense and hardship, embarrassment and damages to her reputation and employment opportunities and entitling plaintiff to amount of actual damages for loss of wages, benefits, and promotional opportunities including an award of front pay compensating plaintiff for loss of future salary and benefits, mental anguish, humiliation, embarrassment and emotional injury; of not less than four million dollars ($4,000,000.00) plus an award of punitive damages, costs and attorney's fees.

## AS FOR A THIRD CAUSE OF ACTION
### New York. Exec. Law s. 296(1)(a)

90.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 89, as if fully set forth herein.

91.    Defendant's wrongful treatment of plaintiff on the basis of her sex, gender and disability is a violation of New York's Human Rights Law s. 296 et. seq.

92.    Defendant Starbucks and Kiner were aware of Defendant Caron's actions against plaintiff but did nothing to stop the discriminatory behavior directed at plaintiff

93.    Further, Defendants Starbucks and Kiner were aware of Plaintiff's disability and failed to provide the required accommodations available to Plaintiff under the law.

94.    Plaintiffs Starbucks and Kiner did in fact facilitate Plaintiff's termination after they were notified that plaintiff was seeking a leave as an accommodation for her disability.

95.    As a result of the foregoing, plaintiff has been denied employment, lost wages, benefits, promotional opportunities, bonuses, has suffered mental anguish, emotional distress and

loss of enjoyment of life, and has incurred damages thereby.

96.    The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, causing plaintiff to suffer and continue to suffer distress, humiliation, great financial expense and hardship, embarrassment and damages to her reputation and employment opportunities and entitling plaintiff to amount of actual damages for loss of wages, benefits, and promotional opportunities including an award of front pay compensating plaintiff for loss of future salary and benefits, mental anguish, humiliation, embarrassment and emotional injury; of not less than four million dollars ($4,000,000.00) plus an award of punitive damages, costs and attorney's fees.

### AS FOR A FOURTH CAUSE OF ACTION
#### Intentional infliction of emotional distress
#### under New York common law as to all defendants

97.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 96, as if fully set forth herein.

98.    Plaintiff's employment with Defendant Starbuck's was above satisfactory.

99.    Defendants intended, knew or should have known that their actions directed toward plaintiff would cause her severe emotional distress.

100.    Defendants' conduct directed toward plaintiff was extreme and outrageous

101.    As a result of the foregoing egregious conduct, plaintiff has suffered severe emotional distress, and has incurred damages thereby.

102.    The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff causing plaintiff to suffer and continue

13

to suffer distress, humiliation, great financial expense and hardship, embarrassment and damages to her reputation and employment opportunities and entitling plaintiff to damages in the amount of two million dollars ($4,000,000.00) as well as punitive damages, costs and attorney's fees.

### AS FOR A FIFTH CAUSE OF ACTION
### Retaliation in Violation of 42 U.S.C. s. 2000e

103.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 102 as if fully set forth herein.

104.    Plaintiff's work performance was good until she reported the her disability to defendants.

105.    As a proximate result of defendant's retaliation against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

106.    As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

107.    The conduct of defendants was outrageous;  was done in a deliberate, callous, malicious, fraudulent and oppressive manner intended to injure plaintiff; was done with an improper and evil motive, amounting to malice and spite;  and was done in conscious disregard of plaintiff's rights.  Plaintiff is therefore also entitled to an award of punitive damages.

108.    As a result of the foregoing, plaintiff has been denied employment;  has lost wages, benefits, promotional opportunities, and bonuses;  has suffered mental anguish, emotional distress and loss of enjoyment of life;  and has incurred damages thereby.

14

109.    The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, causing plaintiff to suffer and continue to suffer distress, humiliation, great financial expense and hardship, embarrassment and damages to her reputation and employment opportunities and entitling plaintiff to damages in the amount of two million dollars ($4,000,000.00) as well as punitive damages, costs and attorney's fees.

## AS FOR A SIXTH CAUSE OF ACTION
### Breach of Employment Contract

110.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 109, as if fully set forth herein.

111.    On or about October 1, 2003, Defendant Starbucks  extended and defined offers of employment to plaintiff stating excellent salaries, benefits and a workplace free of discrimination and harassment and free from termination for any reason not prohibited by law.

112.    Plaintiff relied on these representations, terms and commitments and agreed to same as terms and conditions of her employment relationship with defendants, and as an inducement to accept her original position and continue to work for defendant.

113.     Plaintiff fulfilled her part of the agreement as is evidenced by her excellent evaluations.

114.     However, Defendant terminated Plaintiff within two (2) days of her request for a medical leave of absence in violation of both State and Federal Laws thereby breaching said contract with Plaintiff.

115.    As a result of defendants breach of contract, plaintiff has suffered distress,

15

humiliation, great financial expense and hardship, embarrassment and damages to her reputation and employment opportunities and entitling plaintiff to damages in the amount of two million dollars ($4,000,000.00) as well as punitive damages, costs and attorney's fees.

**AS FOR A SEVENTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION AND/OR RETENTION**
**IF AN UNFIT EMPLOYEE AS AGAINST**
**DEFENDANTS STARBUCKS AND KINER**

116.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 115, as if fully set forth herein.

117.     Defendants had a duty to provide a safe workplace and one free of discrimination.

118.     Defendants failed to take reasonable steps to determine the fitness of Defendant Caron who embarked on a mission to harm Plaintiff.

119.     Defendants were aware of Defendant Caron's actions but did nothing to stop him and thereby subjected Plaintiff to undue harm

120.     Defendants failed to reasonably supervise Defendant Caron, deliberately retained him as an employee, while have actual and/or imputed knowledge of the undue risk of harm to which they were exposing Plaintiff giving rise to Plaintiff being damaged by his actions.

121.     As a proximate cause of defendants breach of duty plaintiff has been injured and has incurred damages.

122.     The conduct of defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff causing plaintiff to suffer and continue to suffer distress, emotional injury, humiliation, great financial expense and hardship, embarrassment and damages to her reputation and employment opportunities and entitling plaintiff to damages in

the amount of two million dollars ($4,000,000.00) as well as punitive damages, costs and attorney's fees.

## AS FOR A EIGHTH CAUSE OF ACTION
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
## AGAINST DEFENDANTS STARBUCKS AND KINER

123.    Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through122 as if fully set forth herein.

124.    Plaintiff timely requested a medical leave of absence with Defendant on or about September 20, 2008 as directed by Defendant Kiner.

125.    Plaintiff immediately informed her supervisor Defendant Brewster of her request.

126.    On or about two days after Plaintiff's request and Defendant Brewsters knowledge, Plaintiff was terminated from her position.

127.    Defendants timing of Plaintiffs termination had an adverse action on her compensation for the year.

128.    Pursuant to Defendants policy, Plaintiff would have been entitled to 2/3 of her pay during her medical leave of absence.

129.    Defendants termination of Plaintiff prevented her from obtaining the 2/3 of per pay.

130.    Defendants termination of Plaintiff further prevented her from receiving her portion of the compensation that would have been due to her based on yearly performance.

131.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment

132.    Plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits, impairment and damage to plaintiff's good name and reputation by defendants, severe and lasting

17

embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

133.    The conduct of defendants was outrageous and malicious, was intended to injury plaintiff, and was done with reckless indifference to plaintiff's protected rights. As a result of defendants acts, Plaintiff suffered and is entitled to actual damages in an amount not less than four million ($4,000,000.00) dollars for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits an award of reasonable attorney's fees and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court enter judgment against the defendants as follows:

a. First Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

b. Second Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

c. Third Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

d. Fourth Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

e. Fifth Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

f. Sixth Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

g. Seventh Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

18

h. Eighth Cause of Action: $4,000,000 in compensatory damages, punitive damages, costs and attorney's fees.

i.. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. s. 2000e;  and other applicable codes

j.  Injunctive relief:  an injunction requiring defendant to correct all present and past violations of Federal and State law as alleged herein; to enjoining defendants from continuing to act in violation of Federal and State law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said Federal and State law.

k.  granting such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all claims stated herein.

Dated:  Seaford, New York
          October 31, 2008

                         LAW OFFICE OF SUSAN P. JACOBS


                         By: _____
                              SUSAN P. JACOBS (SJ6485)
                              Attorneys for Plaintiff
                              Jennifer Mancini
                              2501 Cedar Street
                              Seaford, New York  11783
                              (516) 783-1547